**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RASHAD PAYNE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 03-3919** |
| | : | |
| **THE CITY OF PHILADELPHIA, et al.** | : | |

**MEMORANDUM AND ORDER**

Kauffman, J.                                                                      December   18 ,  2007

        Now before the Court is the Motion for Summary Judgment (the "Motion") of

Defendants Shirley Hooks, Gary Hines, and the City of Philadelphia.  For the reasons that follow,

the Motion will be granted.

**I.  BACKGROUND**

        This action arises out of a report of child sexual abuse received by the City of

Philadelphia's Department of Human Services ("DHS") and the subsequent investigation of

Plaintiff Rashad Payne ("Plaintiff") and his family.  On or about July 17, 2002, DHS received an

anonymous complaint that Plaintiff's eight-year-old son had been sexually abusing his two-year-

old daughter.  Compl. ¶ 7.  Pursuant to the Pennsylvania Child Protective Services Law, 23 Pa.

Cons. Stat. §§ 6301 et seq., DHS began an investigation.  As part of the investigation, DHS

assigned a social worker for Plaintiff's son and a separate worker for his daughter.  Id. ¶ 9.

Defendant Shirley Hooks[1] ("Hooks"), the social worker assigned to Plaintiff's son, interviewed

Plaintiff.  Id. ¶ 10.  When she asked him whether he was homosexual, Plaintiff refused to answer

---

        [1]        The Complaint incorrectly identifies Shirley Hooks as Shirley Cook.

and asked to speak to Hooks's supervisor.  See Pl.'s Dep. 26, attached to Defs.' Mot. for Summ.

J. at Ex. 2.[2]  According to Plaintiff, the question about his sexual orientation was "the beginning

and the end of the conversation" with Hooks, and he did not have further contact with her.  Id. at

61.

       After Plaintiff complained to Hooks's supervisor, she was removed from the investigation

and replaced by Defendant Gary Hines ("Hines").  Id. at 66.  Plaintiff met with Hines once.  Id.

During this meeting, Hines "lectured" him and "said inappropriate things to [him]" about his

sexuality.[3]  Id.  Plaintiff ended the interview and made a formal complaint to Hines's supervisor.

Compl. ¶¶ 16-17.

       On August 27, 2002, Hines drafted an Investigation Summary that contained confidential

information about Plaintiff.  Id. ¶ 21.  Because Plaintiff is a Philadelphia police officer, the

Philadelphia Police Internal Affairs Division began a separate investigation.  Id. ¶ 22.  On

October 9, 2002, DHS sent Plaintiff a letter stating that the investigation of sexual abuse was

closed and unfounded.  Id. ¶ 23.  The Internal Affairs Division also closed its investigation.  Id. ¶

24.

       During the course of the investigations and thereafter, Plaintiff and his wife were

involved in divorce and child custody proceedings.  On March 27, 2003, Debra Frankel

("Frankel"), the attorney representing Plaintiff's wife, issued a subpoena directing Hines to

testify and to bring "any and all records pertaining to [Plaintiff's son]."  Id. ¶ 26; Gary Hines

---

     [2]      Defendants deny that Hooks asked this question, but they accept Plaintiff's
allegation as true for purposes of this Motion.

     [3]      Defendants deny that Hines lectured Plaintiff in any way, but they accept
Plaintiff's allegation as true for purposes of this Motion.

Subpoena, attached to Defs.' Mot. for Summ. J. at Ex. 4.  Pursuant to DHS procedure, Hines

requested legal advice from the City of Philadelphia Law Department, but did not receive a

response.  Dep. of Gary Hines ("Hines Dep.") 78, attached to Defs.' Mot. for Summ. J. at Ex. 3.[4]

When Hines appeared in response to the subpoena, he brought a copy of the confidential

Investigative Summary for the purpose of refreshing his recollection about the case.  Id.  After

Hines arrived in court, Frankel showed him the subpoena and requested the Investigative

Summary, which Hines released to her.  Id. at 86.  According to Hines, the only reason he

released the Investigative Summary was because of the subpoena.  Id.  As explained by the DHS

Handbook, written summaries and reports of child abuse investigations are confidential and may

not be released except in specified circumstances.  See DHS Handbook § 1110.1, attached to

Defs.' Mot. for Summ. J. at Ex. 5.[5]  Pennsylvania law also requires that the Investigative

Summary be kept confidential.[6]  Plaintiff alleges that during the divorce proceeding, Frankel

attached the confidential Investigative Summary to a petition to suspend his parental rights.

Compl. ¶ 32.

---

[4]      Hines testified that the Law Department determines whether a subpoena is
sufficient to authorize the release of confidential information.  Hines Dep. 69.  He also stated that
the Law Department's general policy is to provide legal advice when requested, but that in this
case, "[n]o one got back to [him]."  Id. at 78.

[5]      The Handbook explains that confidential information may be released pursuant to
a court order or a subpoena in a criminal child abuse proceeding, but neither exception applies in
this case.  Frankel, as the attorney representing Plaintiff's wife in divorce and custody
proceedings, was not authorized to receive confidential information.

[6]      Both the Child Protective Services Law, 23 Pa. Cons. Stat. § 6340(a), and the
Mental Health Procedures Act, 50 Pa. Cons. Stat. § 7111(a), specify the persons to whom
confidential information can be released.  Frankel is not one of the persons specified by either
statute.

Plaintiff further contends that Hooks and Hines, acting under color of state law, caused him emotional distress, damage to his reputation, and financial loss, in violation of his constitutional rights and 42 U.S.C. § 1983.  Id. ¶¶ 35-36, 46, 48.[7]  Plaintiff asserts that Defendant City of Philadelphia (the "City") permitted, encouraged, ratified, and was indifferent to a pattern, practice, and custom of behavior by DHS employees that violated the constitutional rights of individuals.  Id. ¶¶ 50-53.[8]  On March 17, 2005, this action was reassigned from the calender of Judge Kelly to the calendar of this Court.

## II.  LEGAL STANDARD

In deciding a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the test is "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law."  Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine the evidence in the light most favorable to the non-moving party and resolve all reasonable inferences in that party's favor.

---

[7]     The Complaint originally named Alba Martinez, Commissioner of DHS, as a defendant, but on August 9, 2004, the Honorable James McGirr Kelly granted her Motion for Judgment on the Pleadings and dismissed all claims against her.  Hooks and Hines remain defendants in their individual capacities.

[8]     The Complaint also sought relief under Pennsylvania state law, but on January 25, 2005, pursuant to a stipulation of the parties, Judge Kelly dismissed all supplemental state law claims.

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  However, "there can be 'no genuine issue as to any material fact' . . . [where the non-moving party's] complete failure of proof concerning an essential element of [its] case necessarily renders all other facts immaterial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

The party moving for summary judgment bears the initial burden of showing the basis for its motion.  <u>See</u> <u>Shields v. Zuccarini</u>, 254 F.3d 476, 481 (3d Cir. 2001).  If the movant meets that burden, the onus then "shifts to the non-moving party to set forth specific facts showing the existence of [a genuine issue of material fact] for trial."  <u>Id.</u>


## III.  DISCUSSION

### A.  Section 1983 Claims Against Hooks and Hines

"[T]o establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law."  <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1141 (3d Cir. 1995) (quoting <u>Moore v. Tartler</u>, 986 F.2d 682, 685 (3d Cir. 1993)).  In a Section 1983 action, the Court is required to "'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"  <u>Nicini v. Morra</u>, 212 F.3d 798, 806 (3d Cir. 2000) (quoting <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 841 n.5 (1998)).  In the instant case, Plaintiff claims that Hooks and Hines violated his Fourteenth Amendment rights to privacy and "familial integrity."  Defendants contend that Plaintiff cannot establish any violation of

constitutional rights, and accordingly, his Section 1983 claims must fail.[9]

In order for Plaintiff to establish a substantive due process violation under the Fourteenth Amendment, he must demonstrate that the conduct of Hooks and/or Hines was "conscience-shocking" rather than merely negligent.  Lewis, 523 U.S. at 849; see also Daniels v. Williams, 474 U.S. 327, 332 (1986) ("Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person.  To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.").  As the Supreme Court has explained, "the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm."  Lewis, 523 U.S. at 848; see also Paul v. Davis, 424 U.S. 693, 701 (1976) (explaining that the Fourteenth Amendment is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States").  "The exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case."  Miller v. City of Philadelphia, 174 F.3d 368, 375 (3d Cir. 1999).

### 1.  Hooks

"The Supreme Court has recognized a 'fundamental liberty interest of natural parents in the care, custody, and management of their child.'"  Id. at 373 (quoting Santosky v. Kramer, 455 U.S. 745, 753 (1982)).  This liberty interest, however, is not absolute, and "the right to familial

---

[9]      Defendants also assert that Hooks and Hines are entitled to qualified immunity.  Because the Court finds that Plaintiff has failed to establish a violation of his constitutional rights, it is not necessary to reach the qualified immunity issue.  See Sameric Corp. of Del., Inc. v. City of Philadelphia, 142 F.3d 582, 590 n.6 (3d Cir. 1998).

integrity . . . does not include a right to remain free from child abuse investigations." <u>Croft v. Westmoreland County Children & Youth Servs.</u>, 103 F.3d 1123, 1125 (3d Cir. 1997).  Moreover, absent evidence that a social worker abused the child abuse investigation process to harass an individual, mere dissatisfaction with the manner in which an investigation is conducted does not give rise to an actionable due process claim.  <u>See</u> <u>Puricelli v. Houston</u>, 2000 U.S. Dist. LEXIS 7976, at *34 (E.D. Pa. June 12, 2000) ("[I]n light of the significant interest in protecting children from potential abuse and lacking any evidence to support the claim that the Defendants needlessly prolonged their investigation to harass or retaliate against the Plaintiffs, the Court will not impute malicious intent to the Defendants simply because the investigation took longer or was conducted in a different manner than the accused's family would prefer.").  Accordingly, Plaintiff's dissatisfaction with the manner in which Hooks questioned him during the investigation is insufficient to establish a constitutional violation.

 Assuming that Hooks's question about Plaintiff's sexual orientation was improper, a single inappropriate comment made by a social worker during an investigation is not conscience-shocking conduct.  <u>See</u> <u>Coleman v. N.J. Div. of Youth & Family Servs.</u>, 246 F. Supp. 2d 384, 390 (D.N.J. 2003) (explaining that social workers who made comments about a mother's sexual history, such as "we also understand that you were caught with another man and your husband committed suicide," did not violate her right to familial integrity).

Nor does Hooks's question violate Plaintiff's right to privacy.  While the Supreme Court has recognized that the right to privacy protects "the individual interest in avoiding disclosure of personal matters," <u>Whalen v. Roe</u>, 429 U.S. 589, 599 (1977), "questions do not invade privacy, answers do." <u>C.N. v. Ridgewood Bd. of Educ.</u>, 319 F. Supp. 2d 483, 494 (D.N.J. 2004) (quoting

Nat'l Fed'n of Fed. Employees v. Greenberg, 983 F.2d 286, 294 (D.C. Cir. 1993)).[10]  Plaintiff

was not compelled to answer Hooks's question, and he never did.  Accordingly, no personal

information was disclosed, and summary judgment will be granted in favor of Hooks.

### 2.  Hines

As discussed above, Plaintiff's allegations that Hines included him in the child abuse

investigation and that Hines lectured him on his sexuality do not establish a violation of the right

to family integrity.[11]  See Croft, 103 F.3d at 1125; Coleman, 246 F. Supp. 2d at 390.  Plaintiff

bases his right to privacy claim on Hines's release of the confidential Investigative Summary to

Frankel, who represented Plaintiff's wife in their divorce and child custody proceedings.  It is

clear that under Pennsylvania law and DHS policy, Hines was not authorized to release the

Investigative Summary.  The question is whether Hines's release of the private information was

the result of mere negligence or was "conscience-shocking" behavior.  Lewis, 523 U.S. at 849.

In cases such as this, where Hines had several days to decide how to respond to the subpoena,

Plaintiff must show that Hines's behavior reflected deliberate indifference to Plaintiff's privacy

rights.  See Nicini, 212 F.3d at 811.

At best, Plaintiff's evidence shows that Hines acted negligently in responding to the

subpoena.  In his deposition, Hines stated that when he received the subpoena, he followed

established procedures by seeking legal advice on how to respond.  See Hines Dep. 78.  When

---

[10]     The Third Circuit has found that sexual orientation is an "intimate aspect" of
one's personality and is therefore entitled to privacy protection under Whalen.  Sterling v.
Borough of Minersville, 232 F.3d 190, 196 (3d Cir. 2000).

[11]     Plaintiff speculates that Hines "refocused" the investigation on him because of his
sexual orientation, but he has offered no evidence to support his theory.

the Law Department failed to provide him with guidance as to what information must not be released, Hines appeared in court and was again shown the subpoena.  Id. at 86.  Without guidance on how to respond, he decided to comply with the explicit instructions of the subpoena and released the Investigative Summary to Frankel.  While hindsight has proven that decision to be incorrect, the Court must evaluate his decision at the time it was made.  Kaucher v. County of Bucks, 455 F.3d 418, 428 (3d Cir. 2006); Nicini, 212 F.3d at 814 (declining to "second-guess [the defendant's] actions from hindsight").  Ultimately, a layman's mistaken compliance with the literal terms of a subpoena is not "conscience-shocking" conduct, and the Court will therefore grant summary judgment in favor of Hines.

### B.  Section 1983 Claim Against the City

Plaintiff's claim against the City is based on the Supreme Court's decision in Monell v. Department of Social Services, 436 U.S. 658, 694 (1978), which permits liability to be imposed against a municipality pursuant to Section 1983 only when a custom, policy, or practice of the municipality caused the constitutional violation.  However, as discussed above, Plaintiff has not established that any constitutional violation occurred.  Accordingly, the Court will grant summary judgment in favor of the City on the Monell claim.

## IV.  CONCLUSION

Because Plaintiff has not established that any Defendant violated his constitutional rights, the Court will grant summary judgment in favor of all Defendants.  An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RASHAD PAYNE | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 03-3919 |
| | : | |
| THE CITY OF PHILADELPHIA, <u>et al.</u> | : | |

## <u>ORDER</u>

**AND NOW**, this      18th      day of December, 2007, upon consideration of Defendants' Motion for Summary Judgment (docket no. 30), Plaintiff's Response thereto (docket no. 33), Defendants' Reply (docket no. 35), Plaintiff's Supplemental Response (docket no. 39), and Defendants' Surreply (docket no. 40), and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that the Motion is **GRANTED**, and the Clerk of the Court shall mark this case **CLOSED**.

BY THE COURT:


/s/ Bruce W. Kauffman
BRUCE W. KAUFFMAN,  J.